Hello, I believe we have everybody online. This is Rob from Pasadena. Okay. All righty, Your Honors. Judge Collins? I'm here. All right. We have both counsel on the line. Before we begin, because we're all on telephone now, the clock can't show up here. The argument is set for ten minutes per side, so I've asked the Court Deputy, Mr. Wagner, to give a two-minute warning, and then we'll try and use that as our clue when counsel needs to wind down. Okay. Thank you, Your Honor. Thank you, Your Honor. Okay. And then if any judge, I think you can hear, distinguish our voices, so if any of the judges want to interject a question, feel free to do so. It's a little different when we're all on telephone. All right. Counsel for the petitioner in Oyezle-Banda? Oyezle-Banda. Yes. Okay. May I please report Liar and Fail for the petitioner? All right. May I serve two minutes for rebuttal? You may. You'll get the warning, too. Thank you. Petitioner in this case, Idris Oyezle-Banda, is a man that suffered greatly in his home country of Sierra Leone. He applied for asylum, holding of removal, and relief under the Convention Against Torture based on his race as a member of the minority group of the Tula, his political opinion, and his social group membership as a homosexual in Sierra Leone. He testified that the best of his ability about the persecution he'd endured in his home country and his fight for Sierra Leone. At his hearings, he offered plausible, consistent, and detailed testimony, but he was found incredible. Petitioner offers four issues before this court date. The first of these issues is Petitioner states that the immigration judge and the Board of Immigration Appeals erred and finds Petitioner not credible and denies claims for relief on that basis. The second issue is – I'm sorry, my throat is starting to hurt. The second issue being that the immigration judge and Board of Immigration Appeals erred as a matter of law and finds that evidence on the record did not adequately establish Petitioner's claims for asylum. The third issue presented being that the Board of Immigration Appeals and immigration judge erred as a matter of law finding Petitioner was not eligible for asylum for withholding of removal. And the fourth being that the immigration judge and BIA erred in finding Petitioner not eligible for relief under the Convention Against Torture. I'm going to address the first of these issues being the immigration judge's error in finding Petitioner not credible. Could I interject a question right there? He has three claims, both political, ethnic, and protected groups. But the IFA, I noted in his decision, indicated his understanding that Petitioner did not really fear going back to Sierra Leone all because of his race or because of politics. It was all because of the homosexuality. Is that a fair reading of the testimony? Well, Your Honor, when he first applied and had a credible fear interview, he did express that his parents had killed Sierra Leone. He did express that Sam was a member of the Fulham community and that because of that his parents had been killed, which would have been a reason for him to be seeking asylum. When he sort of stated, he somewhat, he did state that his main problem, his major fear, was based on homosexuality. But he doesn't, he never explicitly states that he wasn't afraid based on his parents having been murdered and his minority group ethnicity. Now, when he, the immigration judge in this case made adverse credibility determinations based on inconsistencies that were incorrectly attributed to Petitioner but were not set on the record, he also made his finding of incredibility based on perceived inconsistencies that were adequately explained and that also related to minor issues not central to the asylum case. How do we deal with the inconsistency of his account of the rebels coming to his parents' home? In one account he says he was in the next room and heard the threat sound of whatever, and then in the next when he goes back to that issue he says, no, he was gone, he wasn't there, he didn't see or hear them. How do we account for that? Petitioner has difficulty, apparent difficulty, expressing his ideas and what he's trying to say in different sentences throughout the case. But he does seem to be stating that what he believes his parents were killed because he does think that the rebels, that he believes that this is what the rebels do and so he assumed that that's what happened to his parents. This is Judge Callahan. The question, you said that the Petitioner has difficulty expressing himself or understanding things. In the record, the IJ specifically makes findings that he can well express himself, that he does understand things, and how do we get past that? Well, Your Honor, if we look at... The IJ was there, we weren't there, and the IJ had an opportunity to see the Petitioner over a period of time and make this evaluation. Yes, Your Honor, that is true. However, if we look at some of the exchanges that take place between the Immigration Judge and the Petitioner in this case, it's obvious that at different places in the record, he's having difficulty understanding what's happening. When we look at the... There's an exchange that takes place between the Petitioner and the Judge and the Attorney where he's being questioned as to the conclusions he has received between the asylum interview and the testimony and he's trying to determine what is the explanation the Petitioner has for these inconsistencies. But he goes about asking the question in such a way that on page 324 to 325, the Petitioner is trying to explain that he doesn't understand what's going on. He says, I didn't say I'm confused, Your Honor, I don't understand your question. The Judge continues to speak against the Petitioner, tries to interject and says, Your Honor, but the Judge continues to talk. At some point, the Attorney, at page 322, the Attorney for the Petitioner tells the Judge he doesn't even understand what's being asked. These are just examples of the inconsistencies that are being attributed to the Petitioner that he's not having an opportunity to explain and that he is trying to explain to the best of his ability but at some point he doesn't even understand what he's being asked. There's also examples on pages, inconsistencies that are not being attributed to him that aren't actually in the record, such as on page 216, Petitioner testifies that the people who attacked him on the basis of his homosexuality said they were going to come back for him. Now this is in court testimony. On page 326, the Judge then states that the Petitioner's testimony is inconsistent with evidence in the asylum interview where he had specifically mentioned that the men went to come back and attack and come back for him but that the Petitioner had never testified to this when he did testify to it and it was on page 216. Another example of inconsistencies that were adequately explained is on page 46-47. The Immigration Judge finds it impossible that the Petitioner would remain in his parents' home after they were killed. The Immigration Judge dismisses the Petitioner's explanation that parts of the town of Sierra Leone were being protected by ECOMOG, E-C-O-M-O-G, and the background materials submitted and part of the administrative record on page 406 and 408 show that ECOMOG was used by a monitoring group that was present in Sierra Leone during this period. However, the Immigration Judge completely dismisses his explanation. Could I ask a factual question? Yes, sir. The IJ refers to the diamonds, the infamous diamonds, as a cluster of diamonds. And I didn't find anything in the record as to which form the diamonds took. Cluster implies something that's going together, but it sounded like these were- Two minutes. I'm sorry. Is there anything in the record that describes what they actually looked like? I think at some point the Petitioner makes the most of covering his hands to show that he was holding some diamonds, but I don't believe there's anywhere in the record that it actually explains what size the diamonds were, how many there were, whether or not work was spent by a cluster of diamonds. That's what I was afraid of. We would further like to petitioner further sometimes that he did prove his- that he did meet his presumptions that he suffered past persecution in Sierra Leone. He was attacked. People who attacked him told him that he was a devil, which he states is commonly used to identify homosexuals in Sierra Leone. He was beaten. He was beaten with sticks. He had a spear. I don't think that the IJ would have disagreed with his having carried this burden if he believed it. I'm sorry, Your Honor. But it all comes down to his credibility. Your Honor, the immigration judge did say that were the facts taken as true, it would establish Petitioner's ability to- we would have established Petitioner's claim to asylum. However, in this case, Petitioner was incorrectly judged to not be credible based on inconsistencies that were attributed to him. He explained that were not based on the record or that were not material to his asylum claim. And as such, he was denied asylum, having met the burden of proof for asylum. And he was additionally denied holding and prevention against torture relief, which he had established his ability to receive.  Okay. Counsel, I'll give you some time for rebuttal, and we'll hear from the government. Good afternoon, Your Honor. Good afternoon. The evidence in this case simply does not compel reversal of the immigration judge's adverse credibility determination. First, the immigration judge pointed to a number of specific cogent reasons for disbelieving the Petitioner's testimony, including inconsistencies that went directly to the heart of Petitioner's claims of persecution on account of his parents' political opinion and nationality, as well as his former homosexuality. You know, Counsel, I understand where you're going with that. The thing that troubles me most about this case is we have a very thoughtful and well-laid-out discussion by the immigration judge, and he gives extreme emphasis to the notion that the Petitioner did not testify that the guys who were beating him up and doing all of that, that he did not testify that they threatened to come back, when in fact that's clearly what he did testify. Not only did he say it, the judge later in the proceeding even comes back to adverse to that on a hearing transcript. So what troubles me greatly here is that because the I.J. put so much emphasis on that supposed admission, and that is the key item that the Petitioner is relying on, why isn't this cause sent back to the I.J. and said, look, you just made a mistake on this. He didn't back that. Well, Your Honor, I do think that was one of the grounds on which he used to find the Petitioner incredible, and I agree with Your Honor that on Administrative Record 216, Petitioner did testify that they said he would come back to them. But I think there are at least three other grounds of inconsistencies that go to the heart of the asylum claim that the immigration judge noted that support adverse credibility finding, as well as noting that the cumulative effect of Petitioner's inconsistencies, both minor and major, led to undercut his complete credibility. Well, you know, if somebody lies to me in one major respect, and I give emphasis to that, I'm inclined to think that any doubt on other points I would resolve against the person's credibility, and it's the emphasis that the immigration judge gives to this alleged omission that I would say is troubling to me. It sounds like it may have colored all of his interpretations and what he said. Well, I believe under Ninth Circuit law, if there are other grounds which uphold the immigration judge's credibility finding, this Court uphold that. And I.J. also mentioned the inconsistencies that Judge Fischer mentioned earlier regarding the rebels coming to his parents' house. He gave two completely inconsistent testimonies about that, including which rebel. In one testimony on pages Administrative Record 219 to 221, he testified that he's clearly in the parlor room of his house with his father. His father's shot by Revolutionary United Front rebels, that he jumps out the window and flees after the shooting. But on pages 353 to 356 and also 366, he testifies that he fled out the window as soon as he saw the rebels coming, that he didn't actually see the rebels talking to his father. And on page 358, he says he's not even sure that his father was shot by Revolutionary United Front rebels. So that completely undercut the credibility on the claim of his parents' political opinion and nationality. As far as his credibility on whether he was persecuted on account of his former homosexuality, there were two other major inconsistencies that went to the heart of his claim that the immigration judge noted. First, he stated that he had been bleeding. The IJ noted that his testimony at the hearing, he stated he was bleeding from his forehead and had a scar from the incident. That's on the record at page 159 and 162. But the petitioner never mentioned this bleeding or his scar in his application for asylum or during his credible fear interview. Second, the petitioner initially testified during his hearing that he was almost beaten to death with wooden sticks. That's on page 73 and 159 of the record. But that he did not have to seek any treatment for his wounds. The IJ later, who was asking him to clarify a number of points, asked him how it was possible that he didn't need medical treatment after almost being beaten to death with sticks. And the petitioner clarified that he was whipped with little tree branches, not wooden sticks. And these two inconsistencies go directly to the heart of the petitioner's asylum claims and I believe support the immigration judge's adverse credibility finding. In addition to those inconsistencies, the IJ also said that all of the petitioner's inconsistencies, when taken cumulatively, undercut his credibility. There are a number of instances of these on the record, Your Honor. For instance, the petitioner repeatedly testified he was afraid of being robbed of his father's diamonds, which is why he didn't get a hotel room when he arrived in the Ivory Coast, or pay for a taxi to help escape Sierra Leone. But he also testified that he managed to secure passage to Mexico by pulling out his diamonds in front of a complete stranger on the wharf in the Ivory Coast. Another instance is when the petitioner testified before the immigration judge that the man named Johnson, whom he secured passage from, told the petitioner that the boat he would stow away on was going to the United States. But he later contradicted himself and testified that Johnson did not, in fact, tell him the boat was going to the United States. Yet another instance when the petitioner testified consistently is he told the officials at the United States-Mexico border that he had lost his identification card, but he also testified that his identification card had, in fact, been stolen by a man wielding a screwdriver in a Chinese restaurant in Tijuana. And in sum, the petitioner told a rather incredible tale of stowing away on an unknown ship with an unknown destination, passage secured by diamonds that he managed to smuggle from Sierra Leone all the way to Mexico, where he was robbed by a man wielding a screwdriver and then attempted to cross into the United States by saying he merely lost his identification papers. Without any corroborating documents or any corroborating testimony, the petitioner's story taken cumulatively is simply too incredible and inconsistent to warrant reversing the immigration judge's decision, and he noted that in his opinion multiple times. Okay. If there are no further questions, I would just say that the IJ's adverse credibility finding should be upheld and the petitioner's petition for review should be denied for those reasons. All right. Thank you. Any questions for my colleagues? Hearing none, I will ask for petitioner's counsel. I'll give you a minute for rebuttal. Thank you, Jan. Jan, the inconsistencies that were noted in this case did not go to the heart of petitioner's claim. The difference between being beaten with sticks and being beaten with branches does not change the fact that he was severely beaten and he was threatened. He had a tire put around his neck and he was put in a little tire for being unrespectful. Additionally, the immigration judge in this case did not find the petitioner guilty of falsely claiming U.S. citizenship, and in fact the immigration judge cites an inconsistency between testimony by a Border Patrol agent and the petitioner when a Border Patrol agent testified on the record that he had no independent recollection of the incident, that he had been working at the time for only a year at the Border Patrol office, and that he couldn't even remember what day of the week it was that this incident occurred. Petitioner stated that he believed he was being asked, where is your document, and he stated that he lost his document. This is not an inconsistency that goes to the heart of petitioner's claim. This is just his version of what happened when he was trying to get admission to the United States. And inconsistencies dealing with the manner of admission to the United States have become a responsibility at the heart of petitioner's claim. Petitioner in this case did establish that giving back his birth for asylum, holding him responsible and expensing against torture, and the immigration judge erroneously relied on inconsistencies that were not pressed on the record and inconsistencies that had been adequately explained in making his ruling. I request that this case be granted release. Thank you, Your Honor. Thank you. Counsel, thank you both. The argument is concluded, the case is submitted, and the judges on the panel will be reconvening by separate telephone conference when we're done here. Thank you all. Thank you for participating by telephone. Thank you. This court for this session stands adjourned.
judges: Fisher, Callahan, Collins